SIMMONS, Trustee, Appellant, vs. OLIVER and others, Respondents.

*October 15 — November 5, 1889.*

*Trusts and trustees: Investment of funds.*

A trustee will not be protected from loss in investing trust funds, unless he invests in government or real estate securities, or in other securities approved by the court to which he is accountable.

APPEAL from the Circuit Court for *Fond du Lac* County. This is an appeal from a judgment of the circuit court, disallowing certain items of the account of the appellant, as trustee of William Oliver, and involves simply the question as to whether the trustee, under the circumstances shown in the case, should be held liable for a loss resulting from investments made for the beneficiaries of the trust estate. The facts will sufficiently appear from the opinion.

For the appellant there was a brief by *Knowles & Phelps,* and oral argument by *Geo. P. Knowles.* They contended, *inter alia,* that where the investment of trust funds is left to the discretion of the trustee, he is bound to exercise only such care and prudence in the execution of the trust as men of common prudence exercise in their own affairs. *Hun v. Cary,* 82 N. Y. 65; *Roosevelt v. Roosevelt,* 6 Abb.

N. C. 447. And if such trustee acts in good faith and without any wilful default or fraud, he is not responsible for any loss which may arise. *Thompson v. Brown,* 4 Johns. Ch. 619; *Hait v. Ten Eycke,* 2 id. 76; *Pierson v. Thompson,* 1 Edw. Ch. 212; *Williams v. Williams,* 55 Wis. 304; *Lovell v. Minot,* 20 Pick. 116; *Harvard College v. Amory,* 9 id. 446.

*N. C. Giffin,* for the respondents, to the point that in the absence of express directions in the instrument creating the trust, or of statutory permission, it is the settled rule of equity that trustees cannot invest trust funds upon mere personal security, nor upon stocks, bonds, or other securities of private business corporations, cited 2 Pomeroy's Eq. Jur. sec. 1074; *Powell v. Evans,* 5 Ves. 839; Willard's Eq. Jur. 613; *Smith v. Smith,* 4 Johns. Ch. 281, 284; *Adair v. Brimmer,* 74 N. Y. 539, 552; *Ackerman v. Emott,* 4 Barb. 626, 636–46, approved in *Ormiston v. Olcott,* 84 N. Y. 343; 1 Perry on Trusts, secs. 453–460.

COLE, C. J. *M. W. Simmons,* as trustee, received the funds mentioned in his account from the former trustee, Smith, to invest and to keep invested for the benefit of the beneficiaries named. The income was to be paid to the widow during her life, and $1,000 was to be paid the children in equal portions when the youngest should arrive at age. No directions were given in the order appointing *Simmons* as to how the trust funds should be invested. It appears that in 1883 the trustee loaned to the McDonald Manufacturing Company a portion of the fund, taking its indorsed note, which note was taken up in February, 1884, by a new note for the amount of the loan unpaid, such note running one year, which was indorsed by the president and secretary of the company. The company at this time was in good financial standing, and the indorsers were reputed to be perfectly responsible and men of ample means. In a

few months, however, the company failed, and turned over its property to a trustee, and the president, who was supposed to have the most property of either of the indorsers, became unable to pay his debts.   The claims against the manufacturing company were finally compromised at fifty cents on the dollar, in cash and notes, and fifty cents in mining stock at $5 a share.   *Simmons* at first declined to take the mining stock, not considering it of any value, but after a few months, thinking it might turn out to be worth something, decided to take it and pay an assessment of $50 upon it, for which it was advertised for sale.   The testimony clearly shows that the compromise made by the creditors of the manufacturing company was the best that could be realized at the time; and that the mining stock, which proved to be worthless, was considered of some value.   The trustee, in his account filed, wishes to be credited and allowed for the mining stock at its face and interest thereon since June 22, 1888, and the amount paid upon it as an assessment, together with another small item of $11. The beneficiaries object to the allowance of these items, and the court below decided that the estate of the trustee must make good the loss resulting to the trust estate by reason of the loan to the manufacturing company.

We think the circuit court was clearly right in holding the trustee liable for the loss of the trust funds under the circumstances.   He made a loan to a manufacturing company upon its note and the personal security of two indorsers.   It is true, when the note for the amount of the loan unpaid was given in February, 1884, in addition to the security of the indorsers the company had assigned to the trustee, as collateral for the payment of the note, a bond which was supposed to be a lien upon real estate, but which was afterwards held by this court to be invalid and not a lien upon its property.   So it eventually turned ont that the loan was made to a private business corporation upon

personal security alone. While there is no evidence that the trustee did not act in good faith in making the loan, doubtless deeming it entirely safe and amply secured, yet he cannot be protected against the loss. We are disposed, on this subject, to follow the English rule which has been adopted in some of our sister states, and hold that the trustee cannot invest trust funds in personal securities, and that it is not an exercise of sound discretion to so invest them. Says PARKER, V. C., in *Ackerman v. Emott*, 4 Barb. 626, 636: "It is a well-settled rule of the English court of chancery that the trustee can only protect himself against risk by investing the trust fund in real estate or governmental securities. He must either take security on real estate, or invest in a fund approved by the court; and no other fund is there approved by the courts except the public funds."

The learned counsel on behalf of the trustee candidly admits that is the rule of the earlier decisions, and the one which is laid down in some of our elementary works on this subject, which say that the trustee is personally liable in case of any loss from investments in personal securities, no matter how safe they may, at the time, seem to be. The concession is according to the fact, as an examination of the authorities will show. But he insists that this well-established rule shall be changed to meet the conditions and needs of present business and methods of investment. Investments, he says, in personal securities are deemed quite as safe and reliable, by good business men, as loans upon real estate, which is subject to great changes in value from one cause or another. This remark may be true when applied to new towns or cities where there is more or less speculation in real estate; but as a general rule the commercial world regards loans made upon adequate real estate security as more safe and desirable than upon personal security. Of course it is not practicable for a trustee always

to find government securities in which to invest, but he can usually find opportunities to make loans upon safe and adequate real estate securities, and, in view of the hazards of other investments, of which this case furnishes a good illustration, we are disposed to hold that the trustee should not be protected against loss in investing trust funds unless he loans on real estate security or invests in some other security approved by the court to which he is accountable for the manner he executes his trust. If this rule shall be found inconvenient, or on the whole not best adapted to the new condition of things, or to the necessities of present business arrangements, the legislature can change it by authorizing the investment of trust funds in shares or stocks, or on the credit of business corporations, or on the personal security of individuals. We prefer to adhere to the well-established rule in relation to the investment of trust funds, and if a change is to be made let the legislature make it. We do not enter upon a discussion of the doctrine which makes an investment on private or personal security at the risk of the trustee, because the law is elementary. The prevailing rule in the United States and in England is to prefer either public securities or real estate securities to personal security, and this, we think, is a wise and salutary rule to follow. Hill, Trustees, 368 *et seq.*, and cases referred to in the notes.; 1 Perry, Trusts, §§ 453 *et seq.;* 2 Pom. Eq. Jur. § 1074; *Clark v. Garfield*, 8 Allen, 427.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.