WILL OF NORTH: YOERG, Trustee, Appellant, vs. NORTH, Beneficiary, Respondent.

*September 11—October 8, 1940.*

For the appellant there was a brief by *Lynn H. Ashley* and *S. W. Jensch,* both of Hudson, and oral argument by *Mr. Jensch.*

For the respondent there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar.*

WICKHEM, J. The will of Anita North admitted to probate on August 23, 1921, devised to executors in trust the sum of $25,000, the annual income to be paid to Mary North during her life, remainder to be divided in equal shares among four named beneficiaries. On request of Mary North, in October, 1922, Joseph Yoerg was appointed trustee of this trust. The principal of the trust included a note of $7,500 secured by a mortgage on the Batten farm. The note was originally in the amount of $9,000, but had been reduced by payments to $7,500. The mortgage had been owned by the North family for many years and was overdue at the time it was assigned to the trustee. Interest was paid at six per cent upon this mortgage up to 1931, and since that time by an agreement between the trustee and mortgagor the interest was reduced to three per cent. The first surcharge objected to by the trustee was $7,500, the principal of the mortgage. The ground of surcharge was that the mortgage should have been disposed of by the trustee. The property described in the mortgage was a farm. Up to 1929, this was appraised at $20,000, in 1930, at from $12,000 to $15,000, and since that time at $12,000. No evidence is required to show that beginning with 1929 farming incomes and values were materially impaired. It is also in evidence that farming conditions in St. Croix county have been particularly adverse due to the drought. From a consideration of all of the evidence, it is our conclusion that the Batten mortgage was not ineligible for retention in the trust portfolio until at least 1930 or 1931, when a drop in the value of the farm made it so; that after that date there is nothing in the record or in what the court judicially knows to indicate that the mortgage could have been sold or foreclosed to advantage; that the security is still substantially more valuable than the amount due upon

the mortgage; that the question whether to foreclose, sell the mortgage, or work out the problem with the mortgagor in some other way was a matter of judgment, and the trustee is not shown to have acted negligently, imprudently, or in bad faith in selecting the latter alternative.

In addition, it is undisputed that for many years the trustee filed annual accounts and that, although these came to the attention of the life *cestui* and she knew of the continued presence in the trust of the Batten mortgage, she never objected or insisted upon its sale or foreclosure. This brings the beneficiary within the doctrine of *Estate of Grotenrath,* 217 Wis. 109, 258 N. W. 453; and *Estate of Schlicht,* 231 Wis. 324, 285 N. W. 730, in which it was pointed out that a *cestui* who with knowledge of the facts has acquiesced in the carrying of certain securities by the trustee is barred from relief for breach of the trust in so holding them.

1 Restatement, Trusts, p. 627, § 219 (1), contains the following summary of the law:

"The beneficiary cannot hold the trustee liable for a breach of trust if he fails to sue the trustee for the breach of trust for so long a time and under such circumstances that it would be inequitable to permit him to hold the trustee liable."

The trial court found that the *cestui* had precluded herself by laches from any surcharges other than the three made by the court. We are of the opinion that this conclusion was correct with respect to the retention of the Batten mortgage by the trustee. This conclusion makes it unnecessary to consider the contention that, as life tenant, the objecting *cestui* has no standing to insist upon restoration of the corpus by replacing a security to which the remaindermen have no objection.

With respect to the reduction of interest by the trustee, the evidence of knowledge by the *cestui* is not so clear, and

we are inclined to sustain the view of the trial court that there was no estoppel. On the merits, however, we conclude that what was said concerning the retention of the mortgage is generally applicable to the trustee's conduct in this respect. Farm conditions being what they were, it was within the scope of the trustee's authority to reduce the interest where this was a prudent way of dealing with the security.

It is stated in 2 Scott, Law of Trusts, p. 1251, § 231.1:

"Even though the mortgagor is in default in the payment of interest or carrying charges, the trustee may be justified under the circumstances in delaying to foreclose the mortgage where such delay is prudent. . . . In this matter, as in other matters relating to the administration of the trust, what is required of the trustee and all that is required of him is that he should take a course which under all the circumstances reasonably appears to be a prudent course. Where the mortgagor is unable to pay the interest on the mortgage, the trustee can make an agreement with him under which the rate of interest is reduced, if this is under the circumstances a prudent method of attempting to salvage the mortgage."

Everything in the record indicates that the trustee's conduct in this respect was prudent, and there is nothing to show that any other course would have produced a greater income to the life *cestui*.

As in the case of the reduction of interest, we are of the view that the trial court's failure to find such knowledge of facts by the *cestui* as would create a waiver or estoppel with respect to the three bonds is supported by the record, and we proceed to examine the merits of the claim.

The bonds were not made a part of the record, and we discover no evidence upon which we could determine whether these securities were proper purchases under sec. 231.32, Stats. 1933. Hence, we are concerned only with the trustee's duty to dispose of the bonds promptly after they came into default. The evidence is sufficiently clear

that he did not do so, and we think that he was liable for any loss sustained by the life *cestui* during this period. The surcharge, however, appears to have been based upon the interest stipulated in the bonds. It is clear to us that in surcharging the trustee's account, the amount should be measured by the return that the trustee could have made had he promptly disposed of the bonds and reinvested in safe and lawful securities. It is not to be concluded without proof that such securities would produce the same income as the bonds in question. We think that this issue was not tried and that the interests of justice require a return of the record for further evidence upon this point.

There is a motion by respondent to review that part of the order which adjudges that the "circumstances were such that the beneficiary, when not supplied with a copy of the trustee's account has resorted to the files of the court for reference as to what securities were held by him," and that "Mary North, *cestui que trust,* is estopped by her own acquiescence and laches during the entire period from 1923 to 1939 to question the eligibility of the securities of this trust as proper trust-fund investments except as hereinafter ordered." The motion to review is not supported by any extended argument, nor is it pointed out that the order in question was in any way prejudicial to respondent. We are not informed that there was any question concerning the eligibility of securities other than those discussed here, and if there was, we discover no evidence in which a court could have further surcharged the account of the executor. Under these circumstances, we consider that respondent has made no showing warranting a reversal of those parts of the order favorable to the trustee, and we do not find it necessary to determine the correctness of the ruling.

*By the Court.*—Order reversed in so far as it surcharges the account of the trustee with the principal sum of the Batten mortgage, and with sums representing reductions on

the interest on the Batten mortgage, and cause remanded with directions to delete the surcharge. Order reversed in so far as it surcharges the trustee's account for interest lost by reason of defaults in the Oregon American Lumber Company and Minnesota & Ontario Power Company bonds, and cause remanded with directions for further proceedings in accordance with the opinion. In all other respects the order is affirmed. Appellant to have costs upon this appeal.